**Marcus Justin KACZ, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 14–07–00841–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 23, 2009.

498

---

Brian W. Wice, Houston, TX, for appellants.

Alan Curry, Houston, TX, for appellees.

Panel consists of Chief Justice HEDGES, and Justices GUZMAN, and BROWN.

## OPINION

JEFF BROWN, Justice.

A jury convicted Marcus Justin Kacz of deadly conduct and sentenced him to 180 days in the Harris County Jail; however, the trial court suspended the sentence in favor of eighteen months probation and a $400.00 fine. Kacz challenges his conviction and sentence contending that (1) the evidence was factually insufficient to support the jury's verdict; (2) the trial court erred in excluding testimony about a witness's statement against his own penal interest; and (3) the trial court erred in denying Kacz's request for a mistrial after the State inquired about Kacz's invocation of his right to remain silent and his right to counsel. We affirm.

### Facts

This case involves a series of encounters on the night of March 23, 2007, which culminated in a physical altercation and gunfire in an apartment-complex parking lot. Many facts about the events of that night are in dispute. What is clear is that the complainant, Cornelio Barrera, and his brother, Esteban Barrera, along with their friends, Saturnino Sanchez and Jenny Arantez, were driving to an apartment complex in Pasadena after drinking at a cantina earlier that evening. Esteban was driving Cornelio's white Ford Explorer. While traveling along the East Sam Houston Tollway, Esteban passed Kacz's vehicle, which began following him. Kacz, an off-duty Pasadena police officer, was driving his own unmarked pickup truck.

Several minutes later, Esteban exited the tollway and stopped at a red light. Kacz, who had stopped behind Esteban, then got out of his vehicle and approached the Explorer. Esteban later testified that Kacz was saying something as he approached, but Esteban could not hear him as the driver's side window was closed. It is not disputed that Kacz was not in uniform, and instead was wearing only a Polo shirt, jeans, and boots. According to Esteban, Cornelio, and Arantez, Kacz approached the Explorer with his handgun drawn. Esteban later testified that, fearing Kacz might shoot him, he ran the red light and sped away.

Kacz returned to his vehicle and followed Esteban to the apartment complex where Cornelio was living at the time. Upon reaching the parking lot, Esteban parked the Explorer, exited the vehicle, and ran away. The other occupants also quickly exited the Explorer. But while Arantez and Sanchez ran away, Cornelio returned to the Explorer to get the keys. By the time Cornelio had retrieved the keys from the Explorer's ignition, Kacz had arrived, gotten out of his truck, and was again approaching with his weapon drawn. It is undisputed that Cornelio threw a bottle of beer at Kacz, and that the two men wrestled on the ground for control of Kacz's handgun. Ultimately, Cornelio got away from Kacz, returned to his Explorer, and quickly drove off. As

Cornelio sped away, Kacz fired shots at the vehicle. Cornelio, Esteban, and their friends were then quickly apprehended by officers of the Pasadena Police Department, responding to a call involving a police officer at the apartment complex.

For firing his handgun in Cornelio's direction as he drove away, Kacz was charged with one count of deadly conduct. He was tried by a jury and convicted. The trial court imposed a sentence of 180 days in the Harris County Jail, but suspended the sentence in favor of eighteen months probation and a fine of $400.00. This timely appeal followed.

## Analysis

Kacz appeals his conviction contending that (1) the evidence was factually insufficient to support the jury's verdict; (2) the trial court erred in excluding testimony about a witness's statement against his own penal interest; and (3) the trial court erred in denying Kacz's request for a mistrial after the State inquired about Kacz's invocation of his right to remain silent and his right to counsel.

### I. Exclusion of Testimony

Kacz contends that the trial court erred in excluding testimony by Pasadena Police Detective Matt Breugger about statements Saturnino Sanchez made on the night of the incident. Specifically, Kacz sought to admit testimony by Detective Breugger that Sanchez told him that the occupants of the Explorer knew that the driver following them was a police officer. According to Kacz, this testimony would support his argument that his pursuit of Cornelio

was justified because he was knowingly evading a police officer.[1]

At trial, the State objected to the testimony, and the following exchange occurred:

DEFENSE: And during that interview did he indicate to you—

PROSECUTOR: Object. They are trying to elicit hearsay testimony. This witness has never been at this trial.

THE COURT: Oh, this witness hadn't testified?

DEFENSE: No, sir. It's a statement of disinterest [sic],[2] Your honor. It's an exception to hearsay.

THE COURT: Oh, that's sustained.

DEFENSE: May we approach, Your honor?

THE COURT: Uh-huh.

(Conference at the bench)

DEFENSE: This witness' statement is while they are fleeing from this white car there's a conversation. And they indicate in the car that they know it's a cop, they believe it to be a police officer, therefore, they are in the course of evading. We will call—if need be we will call this witness. This witness is under subpoena; however, we have reason to believe he is—

THE COURT: No, I'm not allowing that question.

When reviewing a trial court's decision to admit or exclude evidence, we apply the familiar abuse-of-discretion standard. *Ramos v. State*, 245 S.W.3d 410, 417–18 (Tex. Crim.App.2008). A trial court does not abuse its discretion if its evidentiary ruling was within the "zone of reasonable disagreement," and was correct under any

---

1. In this case, Kacz maintains that evading a police offer would be a state-jail felony because Cornelio used a vehicle to flee. *See* Tex. Penal Code Ann. § 38.04(a), (b)(1) (Vernon 2003).

2. The parties agree in their briefing that defense counsel was arguing that Sanchez had made a "statement against interest."

legal theory applicable to the case. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim.App.2007); *Bargas v. State*, 252 S.W.3d 876, 889 (Tex.App.-Houston [14th Dist.] 2008, no pet.). Thus, because the trial court is usually in the best position to decide whether evidence should be admitted or excluded, we must uphold its ruling unless its determination was so clearly wrong as to lie outside the zone within which reasonable persons might disagree. *See Winegarner*, 235 S.W.3d at 790; *Hartis v. State*, 183 S.W.3d 793, 801–02 (Tex. App.-Houston [14th Dist.] 2005, no pet.).

■ On appeal, Kacz contends that the trial court should have admitted the testimony as a statement against the declarant's penal interest, an exception to the hearsay rule. *See* Tex.R. Evid. 803(24).[3] Kacz argues that Sanchez's statement qualifies as against his penal interest because he effectively admitted to evading arrest. *See* Tex. Penal Code Ann. § 38.04(a) (Vernon 2003). But the State maintains that there is no evidence that Sanchez was himself evading a police officer, as it was Esteban who was driving at the time. The State also contends that nothing about the statement shows that Kacz was attempting a lawful arrest or detention.

■ In deciding whether a statement is admissible as a statement against interest in criminal cases, courts employ a two-step process. *See Bingham v. State*, 987 S.W.2d 54, 57 (Tex.Crim.App.1999). First, the court determines whether the statement is truly against the declarant's interest. *Id.* Second, the court must determine "if there are corroborating circumstances that clearly indicate the trustworthiness of the statement." *Id.* If both criteria are met, the statement is admissible. *Id.*

■ We begin with the question of whether Sanchez's statement exposed him to criminal liability. *See id.* For the exception to apply, Sanchez's statements must be against his own penal interest. *See Guidry v. State*, 9 S.W.3d 133, 149 (Tex.Crim.App.1999). While Sanchez's admissions may also implicate someone else's interest, such as a third party or co-actor, unless the statement against that other person's interest is also sufficiently against his own interest, it cannot be considered reliable. *See id.* A statement that incriminates another but not the declarant himself does not merit an exception to the hearsay rule. *See id.*

A person commits the offense of evading arrest or detention if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him. Tex. Penal Code Ann. § 38.04(a), (b)(1); *Hazkell v. State*, 616 S.W.2d 204, 205 (Tex.Crim.App.1981). Even if we assume that Sanchez knew that Kacz was a police officer, culpability would still require proof that Sanchez intended to flee from him, and that Kacz's attempt to arrest or detain Sanchez was, in fact, lawful. *Hazkell v. State*, 616 S.W.2d at 205.

Sanchez told Detective Breugger that there had been a conversation in the Explorer while Kacz was pursuing it in which the occupants discussed their belief that Kacz was a police officer. At that point, however, Sanchez himself was not fleeing Kacz; he was merely a passenger. *See Miles v. State*, 918 S.W.2d 511, 515 (Tex.

---

3. "Statement Against Interest. A statement which was at the time of its making ... so far tended to subject the declarant to civil or criminal liability ... that a reasonable person in declarant's position would not have made the statement unless believing it to be true. In criminal cases, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Tex.R. Evid. 803(24).

Crim.App.1996) (holding that when declarant was merely present during commission of offense, his statement does not subject him to criminal liability and thus is not admissible under Rule 803(24)).

But Kacz relies on *Marron v. State*, No. 01–02–00601–CR, 2003 WL 1938210 (Tex. App.-Houston [1st Dist.] Apr. 24, 2003, no pet.) (mem. op., not designated for publication), to show that even a mere passenger can be liable for the crime of evading arrest. In *Marron*, the defendant was the passenger in a stolen car pursued by two marked police cars with sirens sounding and lights flashing. *Id.* at *3. After the driver ran the stolen car into a ditch, Marron tried to leap from the vehicle and flee on foot despite specific instructions from the pursuing deputies to "Stop, get on the ground." *Id.* at *4. The court of appeals noted that Marron "ignored their commands" and "refused to comply with a lawful order, knowing that the order came from a police officer." *Id.* This evidence, the *Marron* court held, was sufficient to uphold his conviction for evading detention. *Id.*

In this case, Sanchez fled on foot once the Explorer reached the apartment complex. Kacz argues that, like the passenger in the stolen car in *Marron*, Sanchez became liable for evading arrest as soon as he ran from the Explorer. But while Cornelio admits that Kacz identified himself as a police officer to him when he returned to the Explorer to retrieve his keys, at that point, Sanchez was already gone from the scene. Unlike the passenger in *Marron*, Sanchez never received an order to stop from someone he undoubtedly knew to be a police officer.

Moreover, there is nothing in the evidence to establish that Kacz had a lawful basis to arrest or detain anyone in the Explorer. Kacz makes several references on appeal to the amount of alcohol consumed by Esteban and Cornelio on the night of the event, but that evidence was discovered only after they were apprehended—after the incident at the apartment complex. Kacz did not testify that he suspected the Explorer's driver was intoxicated when he encountered the vehicle on the tollway; and he offered no evidence that he believed any of the occupants were intoxicated before the police had arrested them.

The only reason Kacz gives for attempting to detain the Explorer was that the driver had failed to stop and give information after an accident, citing Transportation Code section 550.021(a). But this section expressly applies only to accidents involving personal injury or death, and there was no evidence that any alleged collision on the tollway caused either. *See* Tex. Transp. Code Ann. § 550.021 (Vernon 2008). Kacz may have intended to refer to section 550.022, which requires only damage to an involved vehicle to trigger the duty to stop and give information. *See* Tex. Transp. Code Ann. § 550.022 (Vernon 2008). But although Pasadena Police Sergeant Wesley Fojt testified that Kacz told him that "somebody had hit him" while he was driving on the tollway, Sergeant Fojt also testified that he did not see any "obvious dents or damage" to Kacz's truck. Pasadena Police Detective Terry Sulphin also testified that he examined and photographed both the Explorer and Kacz's truck, and observed no damage. Based on this evidence, the trial court could have concluded that there had been no collision on the tollway at all, and thus no lawful basis for Kacz to arrest or detain the Explorer's occupants. And absent a lawful basis, Sanchez could not be culpable for evading arrest or detention. *See Smith v. State*, 739 S.W.2d 848, 851 (Tex. Crim.App.1987).

The trial court did not abuse its discretion in excluding Detective Breugger's testimony because, based on the evidence, its determination that Sanchez's statement did not qualify as a statement against his penal interest was within the zone of reasonable disagreement.[4] *See Winegarner,* 235 S.W.3d at 790; *Hartis,* 183 S.W.3d at 801–02. Kacz's second issue is overruled.

## II.   *Factual Sufficiency of the Evidence*

Kacz also contends that the evidence presented at trial was factually insufficient to support the jury's verdict. When reviewing a factual-sufficiency challenge, we view all the evidence in a neutral light. *Watson v. State,* 204 S.W.3d 404, 414 (Tex. Crim.App.2006); *Newby v. State,* 252 S.W.3d 431, 435 (Tex.App.-Houston [14th Dist.] 2008, pet. ref'd). We especially discuss and examine the specific evidence that Kacz contends undermines the jury's verdict. *Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App.2003); *Newby,* 252 S.W.3d at 435. We may set aside the verdict only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or if the verdict is against the great weight and preponderance of the evidence. *Watson,* 204 S.W.3d at 414–15; *Newby,* 252 S.W.3d at 435. We may disagree with the jury's conclusions; however, we must avoid substituting our judgment for that of the jury, particularly in matters of credibility. *Drichas v. State,* 175 S.W.3d 795, 799 (Tex.Crim.App.2005); *Newby,* 252 S.W.3d at 435.

### A.   *"Justified under the circumstances"*

A person commits the offense of deadly conduct if he knowingly discharges a firearm at or in the direction of one or more persons. Tex. Penal Code Ann. § 22.05(b)(1) (Vernon 2003). In this case,

it is undisputed that Kacz fired at least two shots at Cornelio as he drove away in the Explorer. There is no doubt that Kacz's actions fulfilled the requirements of the charged offense.

But Kacz argued at trial, and does so again on appeal, that his actions were justified under the circumstances. Specifically, he insists that he was entitled to use deadly force against Cornelio because (1) Cornelio had attempted "unlawful deadly force" against Kacz by throwing a beer bottle at him, as well as attempting to grab Kacz's handgun, and (2) Cornelio's actions created a reasonable fear in Kacz that, if permitted to escape, Cornelio would likely cause serious bodily injury to an unarmed civilian. Kacz further argues that, viewing "the totality of the evidence in a neutral light," the jury's verdict refuting these justifications is "clearly wrong and manifestly unjust."

A police officer is justified in using force against another when and to the degree the officer reasonably believes the force is immediately necessary to make an arrest, or to prevent escape after arrest, if: (1) the officer reasonably believes the arrest is lawful; and (2) before using force, the officer manifests his purpose to arrest and identifies himself as a police officer, unless he reasonably believes his purpose and identity are already known by or cannot reasonably be made known to the person to be arrested. Tex. Penal Code Ann. § 9.51(a) (Vernon 2003). Additionally, a police officer is justified in using *deadly* force against another when and to the degree the officer reasonably believes the deadly force is immediately necessary to make an arrest, or to prevent escape after arrest, when the requirements for the use

---

**4.**  Because Sanchez's statement does not qualify as one against his penal interest, we do not reach the second part of the inquiry under

Rule 803(24)—the exploration of corroborating circumstances indicating the trustworthiness of the statement.

of non-deadly force under subsection (a) are met, and if: (1) the officer reasonably believes the conduct for which arrest is authorized included the use or attempted use of deadly force; or (2) the officer reasonably believes there is a substantial risk that the person to be arrested will cause death or serious bodily injury to the actor or another if the arrest is delayed. Tex. Penal Code Ann. § 9.51(c) (Vernon 2003). The charge of the court included instructions based on these provisions of the Penal Code, and Kacz's only objection to them related to the inclusion of the word "deadly" in relation to the force used by Kacz. The trial court overruled this objection, and Kacz does not mention it in this appeal.[5]

■ Kacz contends the evidence demonstrates that his use of deadly force was justified by Cornelio's use of unlawful deadly force. Specifically, Kacz points to evidence that Cornelio threw a beer bottle at him as he exited the Explorer in the parking lot, and later tried to grab Kacz's handgun as they wrestled on the ground. But a fundamental requirement of both section 9.51(a) and (c)[6] is Kacz's reasonable belief that he is attempting a lawful arrest. See Tex. Penal Code Ann. § 9.51(a), (c). Kacz contends that Cornelio had "violated the law with impunity," committing "multiple felonies." These "felonies" appear to have included failing to stop and give information under Transportation Code Section 550.021(a)(1–3), evading arrest or detention under Penal Code section 38.04(a), and either aggravated assault of a public servant or robbery. See

Tex. Penal Code Ann. §§ 22.02(b)(2) (Vernon 2003 & Supp.2008) & 29.03(a) (Vernon 2003).

As we have already discussed, there was no evidence of either death, injury, or vehicular damage resulting from the alleged collision on the tollway to provide a reasonable basis for Kacz's failure-to-stop-and-give-information complaint. See Tex. Transp.Code Ann. §§ 550.021–.022. Absent this offense, Kacz cannot reasonably claim that Cornelio evaded a lawful arrest or detention, as there was no underlying offense to justify an arrest or detention. See Tex. Penal Code Ann. § 38.04(a). Consequently, Kacz's only lawful basis for arresting Cornelio would be based on the confrontation in the parking lot.

■ On that note, Kacz contends that Cornelio committed aggravated assault of a public servant during the incident in the parking lot, and that this offense justified his use of deadly force. For Cornelio to be liable for that offense, however, the assault has to occur "while the public servant is lawfully discharging an official duty . . . ." Tex. Penal Code Ann. § 22.02(b)(2)(B). But as Kacz was not attempting a lawful arrest, there were no grounds on which the jury could have found for Kacz based on aggravated assault of a peace officer. See Tex. Penal Code Ann. § 22.02(b)(2)(B).

■ Kacz also contends that Cornelio's actions in the struggle for Kacz's handgun amount to robbery. For the jury to find that Cornelio committed robbery, Kacz needs to show that Cornelio intentionally, knowingly, or recklessly caused bodily in-

---

5. It bears noting that, on appeal, Kacz does not challenge the jury's verdict on the basis that he was acting in self-defense. Rather, Kacz bases his appeal solely upon the justification provided to police officers by section 9.51 of the Penal Code. See id.

6. Kacz justifies his use of deadly force under section 9.51(c). But this subsection is predicated upon whether or not "the use of force would have been justified under Subsection (a) . . . ." Tex. Penal Code Ann. § 9.51(c). Therefore the requirements of both subsections apply.

jury to Kacz, or placed Kacz in fear of imminent bodily injury or death, while Cornelio attempted to exercise control over the handgun in such a manner as to deprive Kacz of the use of his weapon. *See* Tex. Penal Code Ann. §§ 29.02(a) (Vernon 2003), 31.03(a), (b) (Vernon 2003 & Supp.2008) & 31.01(4)(B) (Vernon 2003 & Supp.2008). In this context, to "deprive" would specifically mean that Cornelio intended to withhold Kacz's handgun from him permanently or for such an extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner. *Id.* § 31.01(2)(A).

The evidence concerning the struggle over the handgun is very limited. At trial, Sergeant Fojt testified that when he first approached Kacz in the parking lot, he was "visibly upset," and had abrasions and blood on his body consistent with having been in a "scuffle." Fojt further testified that Kacz told him that an occupant of the Explorer, later identified as Cornelio, got out of the truck and "came at him" with one hand in his pocket. Sergeant Fojt testified to the significance of this fact, that police officers are trained to be wary of suspects with hands in their pockets because of the dangers associated with unseen threats. According to Fojt's testimony, Kacz told him that he had identified himself to his attacker as a police officer, but that the man kept coming at him. Kacz also told him that in the ensuing struggle for Kacz's handgun, it had discharged. Fojt testified that Kacz told him that the man got away from him, returned to the Explorer, and then sped away. It was at this point, according to Fojt, that Kacz claimed to have fired two shots at the Explorer.

Pasadena Police Detective Terry Sulphin testified that he inspected the area where the struggle took place, which he described as "very dark." He also testified that he observed a bite mark on Cornelio and a "knot" on his head. Detective Sulphin also saw abrasions on Kacz, as well as scuff marks on his boots and tears in his jeans.

Sergeant Fojt testified that it was against Pasadena Police Department policy for officers to pursue suspects in unmarked vehicles, specifically because the person under pursuit might not know that his pursuer was actually a police officer. Detective Sulphin testified that when inspecting Kacz's pickup truck, he observed a police windbreaker wadded up on the passenger's seat.

Cornelio testified that after Esteban had passed Kacz on the tollway, Kacz got angry. He related that Kacz followed them for about ten minutes before they each stopped at a redlight off of the tollway. At that point, according to Cornelio, Kacz approached the Explorer with his handgun drawn. Cornelio testified that Kacz told Esteban to give him the truck. Both Esteban and Arantez testified that they feared Kacz would shoot them. At that point, according to Esteban, he ran the red light to get away. Esteban said he drove to the apartment complex because that was where Cornelio was living at the time. When they arrived, Esteban and the others ran away. Cornelio also left the Explorer, but because he feared the person following them wanted to steal his vehicle, he went back to get the keys. After he retrieved the keys from the ignition, Cornelio testified that Kacz pulled a gun on him. Cornelio acknowledged that Kacz said he was a police officer, but Cornelio did not believe him. Cornelio further testified that he refused to give his keys to Kacz. According to Cornelio's testimony, Kacz then hit him on the head with the butt of his handgun. Cornelio then grabbed Kacz's arm, and the men fell to

the ground wrestling for control of the handgun. Under cross-examination, Cornelio admitted to throwing a beer bottle at Kacz. He also testified that at some point he knocked the handgun out of Kacz's hand. At that point, Cornelio said that he ran to the Explorer, got in, and sped away. As he drove away, Cornelio said he heard four gunshots. He was stopped moments later by police officers arriving at the apartment complex.

The State also presented testimony from Geraldo Salas, a resident of the apartment complex. Mr. Salas testified that on the night of the incident, he heard a noise from the parking lot "like an impact on the door." When he looked outside, he saw what looked to be two men fighting. Salas testified that he saw a man in a striped shirt on top of another man, and that the man in the striped shirt had his knee on the neck of the other man while he was hitting him. Salas testified that he did not see a badge or any other indication that the man in the striped shirt was a police officer. According to Salas, he then yelled at the men to stop because he was going to call the police. At that point, Salas testified, the man in the striped shirt said he was a police officer. Salas then went back into his apartment and told his wife to call 9–1–1. Salas testified that he then went back outside and again yelled at the men to stop fighting. At that point, Salas said that the man in the striped shirt got off of the other man. The man who had been on the ground then got up and ran to his SUV. Salas said he witnessed the man in the striped shirt then fire four shots at the SUV as it drove away.

There was no testimony that Cornelio made any attempt to obtain Kacz's handgun after it was knocked out of Kacz's hand. All of the testimony supported the conclusion that once he had freed himself, he fled the scene. Based on this evidence, the jury could have considered the testimony and concluded that Cornelio was not trying to rob Kacz of his gun, but was merely attempting to defend himself until he could escape.

■ Finally, Kacz contends that, based on the confrontation in the parking lot, it was reasonable to conclude that there was a "substantial risk" that, if allowed to escape arrest, Cornelio would cause serious bodily injury or death to Kacz or someone else. But Kacz's fear that Cornelio intended him harm is belied by the fact that Cornelio was driving away from Kacz, instead of toward him. And there was no evidence that Cornelio intended harm to anyone else. It was reasonable for the jury to believe he was simply trying to get away from Kacz.[7]

*B. Credibility*

Kacz argues forcefully on appeal that he presented a vastly more credible case at trial and that the evidence supporting the verdict is factually insufficient precisely because credibility weighs so heavily in his favor. He refers to Detective Bruegger's

---

7. Kacz relies on *Sappington v. Bartee*, 195 F.3d 234 (5th Cir.1999) (per curiam), as authority for the proposition that a peace officer is justified in using deadly force to resist an assault by a suspect with whom he has struggled. In *Sappington*, a federal-prison inmate sued a police officer for violating his constitutional rights in the course of arresting him. But the Fifth Circuit held that the officer was entitled to judgment as a matter of law because the plaintiff had been convicted of an aggravated assault of the officer arising out of the same incident. *Id.* at 237. In this case, on the other hand, Cornelio was never even charged with assaulting Kacz, much less convicted of it. *Sappington* is inapplicable here. It remains that without a legitimate cause for arrest, Kacz could not have been justified in his use of deadly force against Cornelio under subsection 9.51(c)(1). *See* Tex. Penal Code Ann. § 9.51(c).

testimony that Cornelio gave a false name and someone else's identification when he was arrested. Other testimony revealed that Cornelio also gave the police incorrect information about whether he had been driving the Explorer, where he resided, what type of vehicle Kacz drove, and how many people had been following the Explorer, among other things. Indeed, Cornelio admitted at trial that he had lied to the police the night of the incident.

But none of Cornelio's lies expose any justification for Kacz firing upon him as he drove away. Neither does Pasadena police officer Jose Ortiz's testimony that Cornelio told him that Kacz had identified himself as a police officer and motioned for him to pull over before the Explorer reached the complex.

More pointedly, Kacz's credibility was likewise less than impeccable. Though he insisted that the Explorer had collided with his truck on the tollway, there was no other evidence—physical or testimonial—that such a collision ever happened.[8]

Our review should not intrude upon the jury's role as the sole judge of the weight and credibility given to any witness's testimony. *See Fuentes v. State,* 991 S.W.2d 267, 271–72 (Tex.Crim.App.1999); *Bargas v. State,* 252 S.W.3d 876, 887 (Tex.App.-Houston [14th Dist.] May 13, 2008, no pet.). The jury was free to weigh the credibility of Kacz's and the other witnesses' testimony, including Cornelio's, as well as the testimony regarding the physical evidence.

Even considering the evidence that appellant contends is contradictory to the State's case, we cannot say that the jury's verdict in this case was against the great weight and preponderance of the evidence.

Nor can it be said that, in light of this evidence, the jury's verdict was manifestly unfair or unjust. Consequently, the evidence was factually sufficient to justify the jury's verdict. *See Watson,* 204 S.W.3d at 414–15; *Newby,* 252 S.W.3d at 435. We overrule Kacz's factual-sufficiency issue.

### III. Denial of Mistrial

▮ In his third issue, Kacz contends that the trial court erred in denying his request for a mistrial after the State inquired about Kacz's invocation of his right to remain silent and his right to counsel. The State replies that the trial court sustained Kacz's objection, and appropriately instructed the jury not to consider the question. But Kacz argues that this instruction was insufficient to counteract the prejudicial effect of the State's question.

At trial, while the State was questioning Sergeant Fojt about his conversation with Kacz in the parking lot on the night of the incident, the following exchange took place:

> PROSECUTOR: Were you able to ask Officer Kacz any follow-up questions about what he told you?
>
> SGT. FOJT: No. We had discussed it briefly when I first got there.
>
> PROSECUTOR: All right. He stopped talking to you and asked for a lawyer, didn't he?
>
> DEFENSE: I'm going to object, Judge, and ask that we approach.
>
> (Conference at the bench)
>
> DEFENSE: I'm going to have to object and ask for an instruction. We have to object. We asked those questions, I'm going to—

---

**8.** Kacz also directs us to Detective Breugger's opinion that Cornelio had been drinking on the night of the incident. But Sergeant Fojt testified that he smelled alcohol on Kacz's breath, too. There is no evidence that either was charged with either driving under the influence or public intoxication.

THE COURT: I'm going to tell them not to consider it.

PROSECUTOR: They're listening to all of this. First, he's not under arrest; and if he stops talking to this officer because he wanted counsel, that's just a fact. It is not—it is not unduly prejudicial to him.

THE COURT: I understand.

PROSECUTOR: I just—Your Honor, I have no other way to explain why the interrogation—why the questions stopped, but they are listening to all of this on cross-examination.

DEFENSE: So, let the record reflect that I've asked for a mistrial.

THE COURT: I'm not going to.

DEFENSE: I understand.

(Questions resume)

THE COURT: Ladies and gentlemen, you are instructed not to consider the last question. It was asked, it wasn't answered, so you don't have to consider that question for any purpose.

■■■■ We review the trial court's denial of a mistrial for an abuse of discretion, keeping in mind that a mistrial is required only in extreme circumstances when the prejudicial nature of the objectionable matter presented is incurable. *Hawkins v. State,* 135 S.W.3d 72, 76–77 (Tex.Crim. App.2004); *Austin v. State,* 222 S.W.3d 801, 815 (Tex.App.-Houston [14th Dist.] 2007, pet. ref'd). Here, because the trial court sustained Kacz's objection and instructed the jury to disregard the question, but denied Kacz's request for a mistrial, we must determine whether the State's question was so harmful that the case must be retried. *See Hawkins,* 135 S.W.3d at 77. To do so, we balance three factors: (1) the prejudicial effect of the question; (2) the curative measures taken; and (3) the likelihood of Kacz's conviction absent the improper question. *Mosley v.*

*State,* 983 S.W.2d 249, 259 (Tex.Crim.App. 1998); *see Hawkins,* 135 S.W.3d at 77 (adopting *Mosley* factors to evaluate whether the trial court abused its discretion in denying a mistrial); *Austin,* 222 S.W.3d at 815 (applying *Mosley* factors when instruction to disregard was given after the State elicited testimony barred by trial court's ruling on motion in limine). If, as here, the court has instructed the jury to disregard improper evidence, we presume that the jury has followed the instruction, unless that presumption is rebutted by contrary evidence. *Thrift v. State,* 176 S.W.3d 221, 224 (Tex.Crim.App. 2005). In determining whether the erroneous evidence mandates a new trial, we look at the facts and circumstances of the case to see if the trial court's instruction cured the admission. *Ladd v. State,* 3 S.W.3d 547, 567 (Tex.Crim.App.1999).

Here, the prejudicial effect was minimal for two reasons. First, the witness never answered the State's question, so the jury never heard whether Kacz had invoked any constitutional rights. Second, the prosecutor's question merely asked, "He stopped talking to you ... didn't he?" The prosecutor never asked if Kacz actually invoked his right to silence; he merely mentioned that Kacz "stopped talking." As demonstrated on cross-examination, Kacz told Sergeant Fojt his version of the events that night. But Sergeant Fojt was unable to test these statements or ask follow-up questions because Kacz "stopped talking." The State was seeking not to prejudice Kacz, but rather to explain the gap in Sergeant Fojt's testimony to the jury.

Kacz argues that the severity of the misconduct in this case weighs heavily in his favor, relying on Justice Murry Cohen's concurrence in *Hicks v. State,* 815 S.W.2d 299, 304 (Tex.App.-Houston [1st Dist.] 1991) ("The prosecutor in this case

violated a rule that has been characterized by the Court of Criminal Appeals as 'hornbook law' that 'no reasonably competent prosecutor' would violate."), *abrogated by Motilla v. State,* 78 S.W.3d 352, 357 (Tex. Crim.App.2002) (standardizing the rule that overwhelming evidence of guilt may be used as a factor to be considered under a harm analysis for constitutional error not affecting substantial rights). Kacz argues that this "prohibition ... violated" by a "veteran" prosecutor was not only "anything but novel," but one that "any prosecutor, let alone a veteran prosecutor, would know was impermissible." But the facts in this case are clearly distinguishable from those earning Justice Cohen's rebuke in *Hicks.* During the closing argument in the *Hicks* trial, the State referred repeatedly to the defendant's failure to testify on his behalf. *Id.* at 301–02. The defendant objected each time, and the trial court overruled every objection. *Id.* The differences between *Hicks* and this case are obvious, and Kacz's reliance on it is misplaced.

The second prong of the *Mosley* analysis concerns what curative measures the trial court employed. That prong was satisfied in this case when the trial court sustained Kacz's objection and instructed the jury to disregard the question.

Under the third prong, we must consider the certainty of conviction absent the prosecutor's question. As we have already stated, the evidence in this case was factually sufficient for the jury to convict Kacz absent any effect of the objectionable question. Further, there was nothing in the record to suggest that the jury was in any way persuaded or affected by the State's question. *See Thrift,* 176 S.W.3d at 224 (appellant must rebut presumption pointing to evidence that the jury failed to follow the trial court's instructions); *see also Phillips v. State,* 130 S.W.3d 343, 356

(Tex.App.-Houston [14th Dist.] 2004, pet. ref'd) (when the record shows no evidence to the contrary, we assume the jury followed the trial court's instruction to disregard). We see no evidence that this isolated question prejudiced Kacz to such a degree as would affect the outcome of his trial. But even if we were to count this factor in Kacz's favor, it would represent only one of the *Mosley* factors—the other two falling squarely in the State's favor.

We hold that the trial court did not abuse its discretion in refusing to grant a mistrial. Kacz's third issue is overruled.

### Conclusion

For the reasons detailed above, we affirm the trial court's judgment.