**Affirmed and Opinion filed December 31, 2020.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00589-CR

**JAIRUS WARREN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court at Law No. 16**
**Harris County, Texas**
**Trial Court Cause No. 2113984**

## OPINION

A jury convicted appellant Jairus Warren, a METRO Police Department patrol officer, of misdemeanor assault for striking a man at a transit center platform with a baton. Asserting that the State failed to disprove his law-enforcement justification defense, appellant complains that (1) the trial court erred in denying his motion for directed verdict and (2) the record contains insufficient evidence to support his conviction. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant and his partner, Officer Daniel Arena Reynoso, arrested the complainant, Darrell Giles on a METRO light rail platform. Appellant was charged with assault causing bodily injury to Giles in connection with the arrest.

At trial, the State presented three witnesses: Giles, Reynoso, and appellant's baton instructor, Seargent M. Bugs. In addition to the witnesses' testimony, the record contains various exhibits, including two excerpts from 2016 surveillance video taken from the METRO light rail platform. The first video excerpt shows the officers' initial encounter with Giles in which, before daybreak, they wake him while he is sleeping on a bench. When Giles stands up and digs in his pockets for a fare, he walks toward Reynoso, prompting Reynoso to draw his Taser. Giles then stops and the situation subsides when Giles appears to leave at the officer's request. The second video excerpt shows a police officer stir a man sitting or sleeping on a bench and draw the sleeping man to his feet, before launching a series of strikes which continue as the man falls to the bench, crouched, and then falls to the ground.

*Testimony of Complainant Darrell Giles*

Giles testified about his background, that he failed out of school in the sixth grade, was unable to obtain a "CDL" (commercial drivers license), that he had hearing problems, and takes medications for seizures. Describing events leading up to the incident at the light rail platform, Giles testified that his live-in girlfriend dropped him off for a Texans' football game, and since that time he had been at the game or in nearby bars and on METRO trains. Giles testified that he was on the platform, trying to make it home, but had fallen asleep.

Giles recalled that he first encountered appellant on the date of the incident

(September 14, 2016) at the Burnett Transit Center, just outside of downtown Houston, when appellant woke him from a slumber on the platform bench and asked him for his fare. Giles testified that he tendered his transit bus card, but that, without explanation, the officers asked him to leave. Giles testified that he had been drinking and did not remember having any physical contact with the officers during the first exchange. Giles recalled that one officer pulled a Taser on him. Giles explained that after the short exchange, around 5:00 am, he went downstairs and waited for the officers to leave before returning to the platform and sitting back in the same spot he earlier had occupied.

Giles testified that the officers approached him again after sunrise. He explained that he pretended to be asleep, but immediately responded when they woke him. Giles testified that appellant stated, "n***a, didn't I tell you to move around?" Giles denied standing up with his fist balled, but recalls being angry. According to Giles, he stood up and civilly said, "Say what?" Giles testified that appellant then began hitting him with "an antenna". Giles did not recall falling on the bench before hitting the ground, but recalls appellant hitting him and appellant saying, "huh, huh, huh, huh."

*Testimony of Officer Reynoso*

During Reynoso's testimony, the trial court admitted into evidence the surveillance videos of the officers' two encounters with Giles. The videos were played for the jury. Reynoso testified that he and appellant first approached Giles to do a welfare check after having seen Giles unresponsive on the platform. According to Reynoso, the officers wanted to make sure Giles was alright.

Reynoso had pulled his Taser on Giles during the before-sunrise exchange. After Reynoso requested proof of a train ticket, Giles began walking toward appellant aggressively with his hands in his pockets to retrieve his bus cards.

3

Reynoso placed his hand out to keep distance from Giles. Giles swatted Reynoso's hand away, prompting Reynoso to pull his Taser. The display of the Taser deescalated the situation.

Roughly two hours later, Reynoso and appellant returned to the transit center in response to a call reporting a trespass. There, they found Giles again asleep on the bench; Reynoso testified it was evident Giles was faking sleep. Appellant "tapped" Giles's foot "excessively" and agitated Giles. Appellant began striking Giles with his baton after Giles stood up. Reynoso believed that initially Giles was aggressive in standing up from the bench, but that Giles did not act aggressively after the first strike of the baton. Giles fell onto the bench and appellant continued to use the baton to strike him. Giles then fell onto the ground and was trying to cover himself, and appellant continued to strike him with the baton. Reynoso interceded, grabbed appellant and "tugged him" off Giles, but appellant repositioned himself over Giles and struck him again two more times. Giles stopped being aggressive after the first few strikes. According to Reynoso, none of the strikes after that were necessary, appellant's use of force was excessive, and appellant should have stopped when Giles hit the bench. Giles was in noticeable pain when he was on the ground and trying to comply.

*Testimony of Baton Instructor*

METRO Police Department Sergeant Michael Bugs, appellant's baton instructor, testified about appellant's use of the baton. He explained that the baton was taught to be used as a "pain compliance" tool; while its purpose is to cause pain, proper use of the baton requires an officer to issue commands and for the officer to reassess the suspect's compliance in accordance with those commands. Bugs reviewed the video and testified that appellant's use of the baton after Giles fell to the bench was improper, that it deviated from how appellant was trained to

4

use the baton because appellant failed to give commands in conjunction with his use of the baton and failed to reassess the need for continued use of the baton.

*Appellant's Motion for Directed Verdict*

At the close of the State's evidence, appellant's counsel moved for a directed verdict, arguing that the State had not proven beyond a reasonable doubt the inapplicability of self-defense or the justification defense typically afforded to law-enforcement officers in their use of force under Texas Penal Code section 9.51(a) ("Justification Defense").[1]   The trial court denied the motion, and the defense presented its case-in-chief.  The jury returned a "guilty" verdict.

## II. ISSUES AND ANALYSIS

Appellant argues that the trial court erred in denying his motion for directed verdict and that the evidence is legally insufficient to support the "guilty" verdict. We review a challenge to a trial court's denial of a motion for directed or instructed verdict as a challenge to the legal sufficiency of the evidence. *See Canales v. State*, 98 S.W.3d 690, 693 (Tex. Crim. App. 2003); *Gabriel v. State*, 290 S.W.3d 426, 435 (Tex. App.—Houston [14th Dist.] 2009, no pet.).  For this reason, we address appellant's first and second issues together.

In evaluating these complaints, we view the evidence in the light most favorable to the verdict.  *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984).  We may not overturn the verdict unless it is irrational or unsupported by proof beyond a

---

[1] On appeal, appellant does not mention or assert any complaints concerning the issue of "self-defense". Therefore, the defined term "Justification Defense" as used in this opinion, refers to the law-enforcement justification defense.

reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The jury stands as the sole judge of the witnesses' credibility and the strength of the evidence. *Fuentes v. State,* 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The jury may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the jury resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

Appellant raised the Justification Defense under Texas Penal Code section 9.51. If a defendant meets the burden of bringing forth evidence in support of a justification defense, the State must disprove the defense beyond a reasonable doubt. *See Hernandez v. State*, 309 S.W.3d 661, 665 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). A jury's "guilty" verdict operates as an implicit finding rejecting the defendant's theory. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). Thus, when an appellant challenges the sufficiency of the evidence to support the jury's rejection of the Justification Defense, we must determine whether any rational trier of fact could have found beyond a reasonable doubt (1) the essential elements of the alleged offense, and (2) against appellant on the Justification Defense. *Ryser v. State*, 453 S.W.3d 17, 27 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd)(discussing law-enforcement justification defense; *See Dearborn*, 420 S.W.3d at 372 (discussing review in the context of other justification defense). "Defensive evidence which is merely consistent with the physical evidence at the scene of the alleged offense will not render the State's evidence insufficient since the credibility determination of such evidence is solely

within the jury's province and the jury is free to accept or reject the defensive evidence." *Saxton*, 804 S.W.2d at 914.

The indictment alleged that on September 14, 2014, appellant "unlawfully intentionally and knowingly cause[d] bodily injury to Darrell Giles, hereinafter called the complainant, by striking him with a baton." A person commits the offense of assault if the person intentionally or knowingly causes bodily injury to another Tex. Penal Code Ann. § 22.01(a)(1). "Bodily injury" means physical pain, illness, or any impairment of physical condition. Tex. Penal Code Ann. § 1.07(a)(8).

The trial court's jury-charge instructions tracked the indictment, and the instructions were consistent with the language for an assault offense under the Penal Code. Texas Penal Code section 9.51 provides in pertinent part:

> (a) A peace officer. . . is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to make or assist in making an arrest or search. . . if:
>
> > (1) the actor reasonably believes the arrest or search is lawful. . .; and
> >
> > (2) before using force, the actor manifests his purpose to arrest or search and identifies himself as a peace officer . . ., unless he reasonably believes his purpose and identity are already known by or cannot reasonably be made known to the person to be arrested.

Tex. Pen. Code Ann. § 9.51. We now consider whether any rational trier of fact could have found beyond a reasonable doubt (1) the essential elements of the assault offense, and (2) against appellant on the Justification Defense.

**Did the State present legally sufficient evidence to support the elements of an offense for assault by bodily injury?**

We first consider the sufficiency of evidence on the essential elements of the assault offense. A rational jury could have found beyond a reasonable doubt each

of the essential elements, including that appellant intentionally or knowingly caused bodily injury to Giles. Tex. Penal Code 22.01(a)(1). "Bodily injury" means physical pain, illness, or any impairment of physical condition. Tex. Penal Code Ann. § 1.07(a)(8). Giles testified that he was in pain after the blows appellant inflicted, and Reynoso testified that he heard Giles crying while appellant was hitting Giles with the baton. *Guzman v. State*, 552 S.W.3d 936, 942 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd). Along with the video evidence of appellant striking Giles, the jury heard testimony describing appellant's continued striking of Giles as well as testimony describing the baton as a tool intended to achieve compliance through pain; thus, the jury reasonably could have inferred that appellant intentionally or knowingly caused bodily injury to Giles. *See Bin Fang v. State*, 544 S.W.3d 923, 929 (Tex. App.—Houston [14th Dist.] 2018, no pet.)(concluding jury reasonably could infer defendant knowingly caused bodily injury where he swung fists at complainant). The jury reasonably could have inferred from this evidence that appellant's use of the baton, a tool appellant was taught to use to achieve pain, did that very thing. *See id*.

**Is the evidence legally sufficient to support the rejection of appellant's Justification Defense?**

Next, we consider whether the evidence is legally sufficient to support the rejection of appellant's Justification Defense. We presume for the sake of argument that appellant met his burden in bringing forth some evidence in support of his Justification Defense and consider whether any rational trier of fact could have found beyond a reasonable doubt against appellant on the law-enforcement justification issue. Appellant's primary contention is that the State failed to disprove an element of intent contained within the Justification Defense. Specifically, he complains that testimony describing some of appellant's conduct as improper, namely the baton instructor's testimony that some of appellant's latter

baton strikes were inappropriate, does not constitute evidence that appellant intended to assault Giles in a way that was not justified. Appellant also seems to suggest that the State had to provide direct testimony that "appellant intended to commit an assault" or some crime, or otherwise do something unlawful. Appellant does not provide legal support for these assertions, and our own research reveals none.

The Justification Defense only protects appellant's use of force against Giles when and to the degree that appellant reasonably believed that such force was immediately necessary to make or assist in making an arrest or search. *See* Tex. Pen. Code Ann. § 9.51(a). A "reasonable belief" is not whatever appellant believed; rather, according to the statute, it is "a belief that would be held by an ordinary and prudent man in the same circumstances as [appellant]." Tex. Penal Code 1.07(42). In this context, the term "ordinary and prudent man" means "ordinary and prudent person." *See Mays v. State*, 318 S.W.3d 368, 385 (Tex. Crim. App. 2010); *Bell v. State*, 566 S.W.3d 398, 402 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

There are rational limits to the Justification Defense. *Ryser v. State*, 453 S.W.3d at 27. "If an officer uses more force than is reasonably necessary, [the officer] exceeds [the officer's] statutory authority and may be subject to criminal liability." *Id*. Sergeant Bugs's testimony that some of appellant's latter baton strikes were inappropriate -- due to appellant's failure to give commands in conjunction with his use of the baton and appellant's failure to reassess the need for continued use of the baton -- would allow a rational jury to find that appellant's stated belief that his use of force was necessary was not reasonable. The record contains ample evidence for the jury to question the reasonableness of appellant's stated belief concerning his use of force:

- Reynoso testified that none of the strikes after the first few strikes were necessary.

- Reynoso testified that before Giles fell to the ground where appellant struck Giles two additional times, Reynoso told appellant to "stop".

- The surveillance video shows Reynoso grabbing appellant's wrist to pull him back before appellant struck Giles two additional times.

A rational jury could have found beyond a reasonable doubt that appellant did not reasonably believe his use of force, particularly the baton-strikes against Giles' chest once Giles already was on the ground, was immediately necessary to make or assist in making an arrest or search. *See id.*; *see also Kacz v. State*, 287 S.W.3d 497, 505 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Therefore, we overrule appellant's first and second issues.

### III. CONCLUSION

Having overruled appellant's dual challenges to the legal sufficiency of evidence to support the denial of appellant's motion for instructed verdict and appellant's assault conviction, we affirm the trial court's judgment.

/s/     Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Jewell and Poissant.

Publish — Tex. R. App. P. 47.2(b).