**Affirmed and Opinion filed June 26, 2018.**



In The

# Fourteenth Court of Appeals

### NO. 14-17-00498-CR

## DELFINO GUZMAN, Appellant

### V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 268th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 14-DCR-068089**

## O P I N I O N

Appellant Delfino Guzman appeals his conviction for assault family violence. He asserts error in four issues. First, appellant contends the trial court erred in refusing to disqualify the district attorney's office. Second, appellant argues the trial court erred in not instructing the jury on the complainant's alleged eligibility to receive benefits under a federal program aimed at assisting domestic abuse victims. Third, appellant claims the trial court erred in granting the State's request for a lesser included offense instruction after evidence closed. According to appellant, by

waiting until after the evidence closed to request a lesser included offense instruction, the State deprived appellant of constitutionally required notice that the State would pursue a lesser included offense and, thus, deprived him of the ability to prepare an informed and effective defense to a lesser included offense. Finally, appellant contends legally insufficient evidence supports the jury's verdict that appellant is guilty of committing assault family violence.

Concluding that appellant has not shown that the trial court committed error in any of three regards he alleges and that legally sufficient evidence supports the jury's verdict, we affirm.

## Background

A Fort Bend County grand jury indicted appellant for felony assault family violence.[1] The State alleged that appellant "intentionally, knowingly, or recklessly cause[d] bodily injury to [Natalie,[2] appellant's wife], by impeding [her] normal breathing or circulation of blood . . . by applying pressure to [her] throat or neck or by blocking [her] nose or mouth."[3] Appellant pleaded not guilty.

Before trial, appellant filed a motion to disqualify the district attorney's office. Appellant argued that the office has a financial incentive to prosecute domestic abuse cases because the office receives grant money under a federal law, the Violence Against Women Act ("VAWA").[4] The trial court denied the motion to disqualify.

---

[1] The method of assault—impeding breathing or circulation—elevates the offense of assault to a third-degree felony. Tex. Penal Code § 22.01(b)(2)(B).

[2] To protect the complainant's privacy, we refer to her and her daughter by pseudonyms.

[3] At trial, the State abandoned any allegation that appellant blocked Natalie's nose or mouth.

[4] *See generally* 34 U.S.C. §§ 10441-10453, 12291-12512. The purpose of VAWA grants is to assist governmental entities "to develop and strengthen effective law enforcement and prosecution strategies to combat violent crimes against women, and to develop and strengthen

2

Appellant also filed a pre-trial motion to instruct the jury that Natalie had a financial incentive to testify falsely in order to receive VAWA benefits. The trial court did not expressly rule on this motion; the judge initially stated during a pre-trial motions hearing that he was not going to instruct the jury as requested but then "h[e]ld ruling until" after a recess during which the appellant's attorney could further research the applicability of VAWA to the facts of this case. After the recess, the judge told appellant's attorney that he could examine witnesses regarding potential "motivation[s]."

The case proceeded to trial. Natalie testified. She said she was scolding her children on the evening of the events in question, and appellant "got angry with [her] and told [her] to stop shouting." Natalie and appellant began arguing. Appellant grabbed Natalie by her arms, then grabbed her by the neck; "[h]is hands were surrounding [her] neck." Natalie said that she had "a little bit" of difficulty breathing when appellant's hands were around her neck. She was afraid when appellant had his hands around her neck. Appellant also hit her hard on the chest with a closed fist. Natalie could not explain exactly what happened or how long the assault lasted because "[e]verything happened so fast." Natalie said that she grabbed appellant in an attempt to push him away from her during the altercation, but she could not remember where she grabbed him.

Natalie testified that her daughter, Eliza, "came between" appellant and Natalie, telling appellant to "[l]eave [Natalie] alone." After appellant released Natalie, appellant called the police. According to Natalie, appellant told the police that they needed to come and remove Natalie from the house.

---

victim services in cases involving violent crimes against women." *Id.* § 10441(a).

On cross-examination, Natalie admitted that she bruises easily. Appellant's attorney also asked Natalie to "show the jury where [appellant's] hands were when they were around [her] neck." Natalie "demonstrated down by [her] clavicles on [her] chest, not around [her] neck."

Eliza testified that her parents were arguing. She said she saw appellant hold Natalie against the wall, his hands gripping her arms. Appellant was very angry. Natalie was struggling to get appellant's hands off of her. Eliza believed her mother was in pain because Natalie was "crying . . . [and] really red in her face." Eliza also believed her mother was having trouble breathing, because Natalie's mouth was open and she was trying to cough.

Deputy Justin Cloud with the Fort Bend County Sheriff's Office testified that he responded to an assault family violence call at the home. Deputy Cloud first spoke to Natalie, who appeared nervous and "shook up." Deputy Cloud observed visible injuries on Natalie's body, including redness on her neck, marks on her collarbone, and scratch marks on her arms, all of which he photographed while at the scene. The photos were admitted and published to the jury. Deputy Cloud testified that Natalie told him "that she was strangled by her husband" and that appellant "grabbed" her. Deputy Cloud observed that appellant's knuckles were red. Based on his observations, Deputy Cloud believed that "[a]ssault family violence and strangulation" had occurred, and he arrested appellant.

Deputy Eduardo Perez assisted Deputy Cloud in responding. Deputy Perez, who is fluent in English and Spanish, translated for Deputy Cloud, who speaks English, and appellant and Natalie, both of whom speak Spanish. Based on what Natalie told Deputy Perez, he believed "[a]ssault family violence, physical assault" occurred and that strangulation may have occurred. Deputy Perez spoke to the daughter, Eliza, who corroborated her mother's account of what happened. Deputy

4

Perez also spoke to appellant, who said that he and Natalie were arguing but that no offense occurred as far as appellant physically assaulting Natalie; rather, appellant contended that he was assaulted by Natalie. Deputy Perez acknowledged that stories often conflict in domestic violence cases, but that Natalie's account was supported by her physical injuries.

Before the case was submitted to the jury, the State requested that the jury be charged on the lesser included offense of assault family violence (without the elevating element of impeding breathing or circulation).[5] Appellant objected, which the trial court overruled. The jury was charged on both the offense as provided in the indictment and the lesser included offense.

The jury found appellant not guilty of the charged offense but found appellant guilty of the lesser included offense, i.e., misdemeanor assault family violence. Upon the parties' agreement on punishment, the trial court sentenced appellant to 300 days in county jail, which was probated for 11 months.

Appellant now appeals.

## Analysis

In four issues, appellant challenges his conviction. He argues that: (1) the trial court erred in denying appellant's motion to disqualify the district attorney's office; (2) the trial court erred in not instructing the jury on Natalie's purported eligibility to receive benefits under VAWA; (3) the trial court erred in charging the jury on the lesser included offense over appellant's fair notice objection; and (4) there is legally insufficient evidence to support the jury's finding that appellant committed assault family violence. We address appellant's last issue first because, if sustained, it

---

[5] First-time assault involving family violence is a Class A misdemeanor. Tex. Penal Code § 22.01(a)(1), (b).

5

would afford him the greatest relief. *See Saldivar v. State*, 542 S.W.3d 43, 45 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

## A. Sufficiency of the Evidence

In his fourth issue, appellant challenges the sufficiency of the evidence to support the jury's guilty verdict. Appellant points to Natalie's testimony, specifically that Natalie did not testify that she suffered pain or became ill because of appellant's conduct. From this, appellant contends the evidence is insufficient to prove that appellant intentionally, knowingly, or recklessly caused Natalie bodily injury.

### 1. *Standard of review*

We apply a legal-sufficiency standard of review in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). Under this standard, we examine all the evidence adduced at trial in the light most favorable to the verdict to determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Temple*, 390 S.W.3d at 360; *Criff v. State*, 438 S.W.3d 134, 136-37 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). This standard applies to both direct and circumstantial evidence. *Criff*, 438 S.W.3d at 137. Accordingly, we will uphold the jury's verdict unless a rational factfinder must have had a reasonable doubt as to any essential element. *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009); *West v. State*, 406 S.W.3d 748, 756 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

Appellant was convicted under section 22.01(a)(1) of the Texas Penal Code. Under this statute, a person commits misdemeanor assault if he intentionally,

knowingly, or recklessly causes bodily injury to another, including the person's spouse. Tex. Penal Code § 22.01(a)(1). "Bodily injury" means physical pain, illness, or any impairment of physical condition. *Id.* § 1.07(a)(8).

On appeal, appellant argues that Natalie "never testified that she became ill because of what Appellant did to her, or otherwise," nor did she "testify that she suffered pain." Appellant thus disputes that there is legally sufficient evidence to support a finding of the "bodily injury" element of the charged offense.

### 2. *Application*

Natalie testified that appellant grabbed her and put his hands around her neck or shoulders. Appellant also hit her hard on the chest with a closed fist. She testified that she had some difficulty breathing when appellant's hands were around her neck. When police arrived, Natalie told them that her husband had "grabbed" her and "strangled" her.

Natalie's daughter, Eliza, also testified. Eliza saw appellant place his hands around Natalie's neck and Eliza believed appellant "was applying [] pressure." Natalie's face was "really red" and she was crying. Eliza thought at the time that "[her] dad is hurting [her] mom." According to Eliza, Natalie was "struggling to get his hands off of her" and was "having trouble breathing."

Deputies Cloud and Perez both testified that they observed visible injuries on Natalie's person. The photographs Deputy Cloud took showed bruising around Natalie's collarbones and upper chest and scratches along her arms.

"While it is always preferable for the complainant to affirmatively state he or she experienced pain, illness, or an impairment of physical condition during the alleged assault, such testimony is not required to sustain a conviction." *Murrieta v. State*, No. 06-05-00241-CR, 2006 WL 1624468, at *2 (Tex. App.—Texarkana June

7

14, 2006, no pet.) (mem. op., not designated for publication); *see also Goodin v. State*, 750 S.W.2d 857, 859 (Tex. App.—Corpus Christi 1988, pet. ref'd) (jury may infer bruising and strained muscles were painful); *Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.) (though no testimony complainant suffered pain from being struck, jury permitted to draw reasonable inference that she was injured from being hit in face by husband). Further, even though the jury found appellant not guilty of assault by strangulation, the jury may still consider any evidence of strangulation in determining whether appellant caused Natalie bodily injury. *See Felder v. State*, No. 03-13-00707-CR, 2014 WL 7475237, at \*4 (Tex. App.—Austin Dec. 19, 2014, no pet.) (mem. op., not designated for publication) (rejecting appellant's argument that court had to disregard evidence of strangulation in sufficiency review of lesser included simple assault, because jury returned not guilty verdict on felony assault by strangulation).

Given Natalie's description of the struggle with appellant, Eliza's description of her mother's condition during the altercation, the officers' testimony regarding Natalie's physical injuries, and the photographs showing Natalie's injuries, we conclude that there is sufficient evidence from which a jury could reasonably infer that Natalie suffered bodily injury from appellant's actions. *See Goodin*, 750 S.W.2d at 859; *see also Hill v. State*, 392 S.W.3d 850, 854 (Tex. App.—Amarillo 2013, pet. ref'd) (jury could have found appellant struck complainant with his hand, thus intentionally, knowingly, or recklessly causing bodily injury, based on complainant's testimony, police officer's description of injuries, and photographs of injuries).

We overrule appellant's fourth issue.

**B. Motion to Disqualify the District Attorney's Office**

In his first issue, appellant contends that the district attorney has a "financial incentive and motive to prosecute cases as violent crimes against women," because the district attorney's office receives money for doing so under VAWA. As a result, appellant contends that Fort Bend County prosecutors had a motivation to charge appellant with an offense involving alleged domestic abuse against a woman when evidence to support the charged offense was lacking. As such, appellant argues that the trial court was required to disqualify the district attorney, and the court's refusal to do so denied appellant a neutral and impartial prosecutor.

1. *Standard of review and governing law*

The standard of review for alleged error in refusing to disqualify a prosecutor is whether the court abused its discretion. *Landers v. State*, 256 S.W.3d 295, 303 (Tex. Crim. App. 2008). The trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005).

In reviewing the facts upon which the trial court's ruling on a motion to disqualify is based, we afford almost total deference to the trial court's determination of the historical facts that the record supports. *Landers*, 256 S.W.3d at 303. When an appellant contends that the lower court erred in applying the law, we review the trial court's ruling de novo. *Id.*

A trial court has limited authority to disqualify an elected district attorney and his or her staff from the prosecution of a criminal case. The office of a district attorney is constitutionally created and protected; thus, the district attorney's authority "cannot be abridged or taken away." *Id.* at 303-04 (internal quotation omitted); *see also* Tex. Const. art. V, § 21. Disqualification requires a conflict of

interest rising to the level of a due process violation. *Buntion v. State*, 482 S.W.3d 58, 76 (Tex. Crim. App. 2016); *State ex rel. Hill v. Pirtle*, 887 S.W.2d 921, 927 (Tex. Crim. App. 1994).

Although due process guarantees an "impartial and disinterested tribunal in both civil and criminal cases," the standards of neutrality that apply to judges are not so stringently required of prosecutors. *Marshall v. Jericho, Inc.*, 446 U.S. 238, 242, 248 (1980). "Prosecutors need not be entirely neutral and detached[.] In an adversary system, they are necessarily permitted to be zealous in their enforcement of the law." *Id.* at 248 (internal quotation and citation omitted). The Supreme Court recognized, however, that the Due Process Clause nevertheless places limits on the "partisanship of . . . prosecutors." *Id.* at 249. "A scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions." *Id.* at 249-50. Although the court declined to specify when a prosecutor's personal interest necessitates recusal or disqualification, it left open the possibility that "different considerations might be held to apply if the alleged biasing influence contributed to prosecutions against particular persons, rather than to a general zealousness in the enforcement process." *Id.* at 250 & n.12.

2. *Application*

Appellant argues that "the alleged biasing influence" is grant money under VAWA, which purportedly leads the Fort Bend County District Attorney's Office to prosecute cases not "against particular persons," but as to particular offenses—i.e., assault family violence. This argument has no merit. Under VAWA, grants shall generally provide "personnel, training, technical assistance, data collection and other resources for the more widespread apprehension, prosecution, and adjudication of persons committing violent crimes against women, for the protection and safety

of victims." 34 U.S.C. § 10441(b). While VAWA provides a number of specific purposes for which grant money may be used, *id.* § 10441(b)(1)-(20), we find nothing in the text of the act that ties a grant (or the amount of a grant) to the number of cases prosecuted. And appellant directs us to no provision of the act supporting his premise.

Still, even if we accepted appellant's contention that grant money has the potential to constitute an "improper financial interest," there must be a "realistic possibility" that the prosecutor's judgment "will be distorted by the prospect of institutional gain as a result of zealous enforcement efforts." *Marshall*, 446 U.S. at 250. When, as here, it is plain that the enforcing agent "is in no sense financially dependent on the maintenance of a high level of penalties," there is no due process concern. *Id.* at 251. Here, the only evidence of a purported financial incentive appellant submitted were financial records showing that the Fort Bend County District Attorney's office receives grant money under VAWA. But appellant's evidence does not show that the VAWA grants are tied in any way to increased enforcement or prosecutions, or that the Fort Bend County District Attorney can reasonably expect to receive greater sums in grant money if the office increases the number of domestic violence prosecutions. Nor does appellant's evidence demonstrate a "personal" biasing interest of the district attorney's office generally, or of appellant's prosecutor specifically. *See id*. at 249-50. Appellant has not established that the district attorney, as a result of receiving federal VAWA grants, had a bias or improper motive in prosecuting appellant's case as an assault family violence case, such that it constituted a violation of appellant's due process rights.

The trial court did not abuse its discretion in refusing to disqualify the prosecutor. We overrule appellant's first issue.

## C.  Jury Instruction on VAWA Eligibility

In his second issue, appellant argues that the jury should have been instructed that Natalie was eligible to receive benefits under VAWA and therefore had a financial incentive to falsely claim that she was the victim of domestic violence.

### 1. *Standard of review*

We review a claim of jury charge error using the two-step procedure set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). First, we determine whether error exists in the charge. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). If so, then we review the record to determine whether sufficient harm was caused by the error to require reversal of the conviction. *See Celis v. State*, 416 S.W.3d 419, 423 (Tex. Crim. App. 2013).

The trial court has a duty to sua sponte instruct the jury correctly on the law applicable to the case. *See Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998). But a jury instruction on a defensive issue is not considered the "law applicable to the case," unless the defense requests its inclusion in the charge or objects to its omission. *See Tolbert v. State*, 306 S.W.3d 776, 779-80 (Tex. Crim. App. 2010). Accordingly, the court has no duty to sua sponte instruct the jury on defensive issues. *See Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) ("The trial judge has an absolute sua sponte duty to prepare a jury charge that accurately sets out the law applicable to the specific offense charged. But it does not inevitably follow that he has a similar sua sponte duty to instruct the jury on all potential defensive issues . . . or evidentiary issues.") (footnote omitted).

Therefore, to preserve error on the omission of an instruction regarding Natalie's alleged VAWA eligibility, appellant must have either requested the instruction or objected to its omission. *See Tolbert*, 306 S.W.3d at 779. The failure

12

to either request the instruction or object to its omission waives the issue for appeal. *See, e.g.*, *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013) ("A defendant cannot complain on appeal about the trial judge's failure to include a defensive instruction that he did not preserve by request or objection: he has procedurally defaulted any such complaint.").

Appellant identifies only one section of VAWA to support his argument. *See* 34 U.S.C. § 10441 (formerly codified at 42 U.S.C. § 3796gg). Section 10441 states that grants may be used for the purpose of, *inter alia*, "providing assistance to victims of domestic violence and sexual assault in immigration matters." Appellant asserts, without record support, that Natalie was not born in the United States.

### 2. *Application*

Appellant's argument is unavailing for two reasons.

First, appellant procedurally defaulted in two respects. By statute, a defendant must provide to the trial court, either in writing or through dictation on the record, the defensive instruction desired. Tex. Code Crim. Proc. art. 36.15. Although appellant's pre-trial motion requested that the court give an instruction on Natalie's eligibility for VAWA benefits, appellant did not propose specific language, nor did he dictate any such instruction on the record at any point during trial. Because appellant did not submit proposed language in writing or dictate it on the record, the trial court had no way of discerning whether VAWA applied in the way appellant contends it does or whether an instruction under VAWA is applicable to the case, supported by evidence, or correctly worded. Accordingly, appellant failed to make a proper request under the statute. *See id.* Further, at the charge conference, appellant's attorney represented that he did not "have any problems" with the charge, except that it listed "guilty" before "not guilty." This constitutes "withdr[awing] the issue from consideration." *Ducksworth v. State*, No. 01-13-00616-CR, 2014 WL

13

2582895, at *5 (Tex. App.—Houston [1st Dist.] June 10, 2014, no pet.) (mem. op., not designated for publication) (statement that "I don't have any additions or deletions" to the charge constituted withdrawing earlier request for lesser included offense instruction). Because appellant withdrew his request for a defensive jury instruction, the trial court had no duty to include the instruction in its charge. *See id.* Thus, omission of the instruction cannot be error. *See id.*

Second, appellant failed to develop any testimony or evidence supporting his argument that Natalie was eligible to receive VAWA benefits or that she intended to seek, or had sought or received, VAWA benefits. On that point, appellant did not show how or why his prosecution constituted an "immigration matter" as contemplated by Section 10441. Accordingly, there was no evidentiary basis for any instruction regarding VAWA. *See Gray v. State*, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004) (jury instructions must "apply the law *to the facts adduced at trial*") (emphasis added); *Hulen v. State*, 167 S.W.2d 752, 754 (Tex. Crim. App. 1942) ("The trial court is required to give in his charge to the jury the law as applicable to the evidence introduced raising some issue, but it would be highly improper to instruct the jury on some theory when there is no basis therefor in the evidence."); *accord also Ramirez v. State*, 422 S.W.3d 898, 901-02 (Tex. App.— Houston [14th Dist.] 2014, pet. ref'd) (because evidence of value is necessary to support a conviction for theft, but no evidence of truck's value had been admitted during trial, court held that there was no basis for instructing the jury on the lesser included offense of theft in prosecution of aggravated robbery); *Nguyen v. State*, 177 S.W.3d 659, 669 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (because accomplice rule applies only to testimony adduced by live witnesses, there was no basis for an accomplice jury instruction for alleged accomplices who did not testify). When there is no basis for a requested instruction, the trial court does not err in

failing to include it in the jury charge. *See Lewis-Grant v. State*, Nos. 14-09-00068-CR, 14-09-00069-CR, 2010 WL 3418232, at \*6 (Tex. App.—Houston [14th Dist.] Aug. 31, 2010, pet. ref'd) (mem. op., not designated for publication).

The trial court did not err in refusing to instruct the jury on Natalie's alleged VAWA eligibility. Because we find no error in the jury charge in this regard, we need not assess whether appellant suffered harm. *See Posey*, 966 S.W.2d at 60-61 (*Almanza*'s harm analysis does not apply unless the appellate court first finds error in the jury charge). We overrule appellant's second issue.

**D.    Jury Charge on Lesser Included Offense**

In his third issue, appellant argues that his constitutional due process rights were violated when the State moved to submit a lesser included offense to the jury after evidence closed. The State's decision to request a jury instruction on a lesser included offense after evidence closed, appellant contends, deprived him of notice that the State potentially would pursue conviction on a lesser included offense. Further, appellant was harmed because the lack of notice prevented him from preparing and presenting a defense to the lesser included offense.

1. *Standard of review*

The goal of a jury charge is to guide the jury's deliberations in reaching an accurate verdict based upon the facts and the law. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). "In a prosecution for an offense with lesser included offenses, the jury may find the defendant not guilty of the greater offense, but guilty of any lesser included offense." Tex. Code Crim. Proc. art. 37.08. An offense is a lesser included offense if, *inter alia*, "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." *Id.* art. 37.09(1). Both the prosecution and the defense are "equally entitled" to an

15

instruction on a lesser included offense. *Grey v. State*, 298 S.W.3d 644, 654 (Tex. Crim. App. 2009) (Cochran, J., concurring). Moreover, the trial court may include an instruction on a lesser included offense, regardless of the parties' desires, requests, or objections. *See id.* (citing, e.g., *Humphries v. State*, 615 S.W.2d 737, 738 (Tex. Crim. App. 1981) (trial judge may submit lesser-included-offense instruction even over defendant's objection)).

We review the trial court's decision to submit a lesser included offense for an abuse of discretion. *See Ramirez v. State*, 422 S.W.3d 898, 900 (Tex. App.— Houston [14th Dist.] 2014, pet. ref'd) (citing *Jackson v. State*, 160 S.W.3d 568, 575 (Tex. Crim. App. 2005)). The trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to guiding rules or principles. *See Penaloza v. State*, 349 S.W.3d 709, 711 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). Because the trial court has no discretion in determining the applicable law, the trial court also abuses its discretion when it fails to analyze the law correctly and apply it to the facts of the case. *See id.*

2. *Application*

Appellant concedes that assault family violence is a lesser included offense of assault family violence by strangulation.[6] Rather, he argues that submission of a lesser included offense is inappropriate when requested by the State after the close of evidence. Appellant does not direct us to any authority supporting his argument;

---

[6] We presume without deciding that the offense of which appellant was convicted is a lesser included offense of the charged offense. *See Amaro v. State*, No. 08-14-00052-CR, 2016 WL 3344568, at *8-9 (Tex. App.—El Paso June 14, 2016, no pet.) (not designated for publication) (assault family violence is lesser included offense of assault family violence by strangulation); *Harrison v. State*, No. 06-11-00196-CR, 2012 WL 1813519, at *5 (Tex. App.—Texarkana May 18, 2012, pet. ref'd) (mem. op., not designated for publication) ("[A]ssault is established by proof of the same or less than all the facts required to establish the commission of assault (family violence) by occlusion.").

16

he instead cites the well-accepted principle that due process requires notice of the offense with which a defendant is charged. *See, e.g.*, *Hall v. State*, 225 S.W.3d 524, 532 (Tex. Crim. App. 2007) (quoting *Schmuck v. United States*, 489 U.S. 705, 718 (1989) (discussing "the right of the defendant to notice of the charge brought against him")).

That a defendant is entitled to notice of the charge against him is beyond dispute. Article I, section 10 of the Texas Constitution guarantees an accused the right to be informed of the nature and cause of the accusation against him in a criminal prosecution. This information must come from the face of the charging instrument. *Voelkel v. State*, 501 S.W.2d 313, 315 (Tex. Crim. App. 1973). This fundamental guarantee enables the accused to learn in advance of trial and with reasonable certainty the nature of the charges against him so that he can prepare his defense. *See Wilson v. State*, 520 S.W.2d 377, 379 (Tex. Crim. App. 1975).

However, we do not agree with appellant that he lacked notice of the potential that the State might seek conviction on a lesser included offense until after evidence closed. "[N]otice of the universe of theoretically possible lesser-included offenses must be given before trial." *Girdy v. State*, 213 S.W.3d 315, 318 (Tex. Crim. App. 2006). This notice is accomplished through the State's cognate pleading approach— the test for determining whether an offense is a lesser included offense of the charged offense—which enables a defendant to know *before trial* what lesser offenses are included within the indictment. *Hall*, 225 S.W.3d at 535-37. Pursuant to *Hall*, "'the elements of the lesser offense do not have to be pleaded if they can be deduced from the facts alleged in the indictment.'" *Salazar v. State*, 284 S.W.3d 874, 878 (Tex. Crim. App. 2009) (quoting *Hall*, 225 S.W.3d at 535). The limitations of article 37.09 satisfy the requirements of due process and notice because the lesser included offense must necessarily be included within the greater, charged offense. *See Jacob*

17

*v. State*, 892 S.W.2d 905, 907 (Tex. Crim. App. 1995); *see also Ford v. State*, 38 S.W.3d 836, 841 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).[7] In fact, the State can abandon an element of the charged offense without prior notice to the defendant and proceed to prosecute a lesser included offense. *Grey*, 298 S.W.3d at 650-51.

Applying these principles here, the lesser included offense of assault family violence was capable of determination before trial by comparing the elements of the greater offense as alleged in the indictment with the elements of the lesser included offense. *See Hall*, 225 S.W.3d at 535-36. Thus, notice of an indicted offense for assault family violence by strangulation constitutes notice of the lesser included offense of assault family violence. For these reasons, "submission of a lesser-included offense does not violate the defendant's constitutional due-process right to notice of the crime of which he is accused." *Wasylina v. State*, 275 S.W.3d 908, 910 (Tex. Crim. App. 2009); *see also Roberts v. State*, 795 S.W.2d 842, 844 (Tex. App.—Beaumont 1990, no pet.) (after trial court directed a verdict on greater offense, court submitted and jury convicted appellant of lesser included offense; court held defendant had notice of lesser included offense).

One of our sister courts of appeals has rejected an argument similar to the one appellant advances here. *Green v. State*, No. 04-12-00830-CR, 2016 WL 4208124, at *2 (Tex. App.—San Antonio Aug. 10, 2016, no pet.) (mem. op., not designated for publication). In *Green*, the defendant argued that he was harmed by the submission of a lesser included offense instruction, because his trial strategy focused on attacking an element of the greater offense and so he did not prepare a defense to

---

[7] Similarly, notice of intent to enhance the sentence for an indicted offense is sufficient notice of intent to enhance the sentence for a lesser included offense. *See Pelache v. State*, 324 S.W.3d 568, 577 (Tex. Crim. App. 2010).

the lesser included charge. *Id.* The court of appeals rejected this argument, holding that Green had pre-trial notice of the potential lesser included offense, based on the allegations in the indictment, and thus "[s]ubmission of the lesser included offense instruction did not violate Green's right to due process." *Id.*

We find *Green* persuasive. The allegations in the indictment at issue gave appellant sufficient notice that he was being charged with causing bodily injury to another. *See* Tex. Penal Code § 22.01(a) (defining the offense of assault). Although the indictment did not specify in the alternative that appellant committed simple assault family violence, rather than felony assault family violence by strangulation, appellant has conceded that simple assault family violence is a lesser included offense of the offense with which he was charged. Appellant received the notice and due process to which he was entitled. *See Hall*, 225 S.W.3d at 537. Appellant had fair warning that the State might seek conviction for a lesser included offense, and he had the opportunity to defend the case accordingly. *Roberts*, 795 S.W.2d at 844. Appellant may have chosen, for strategic reasons, to proceed with an "all or nothing" approach to evidence development at trial and hope the State did not request a lesser included offense instruction, which would force the jury to choose between convicting appellant of the charged offense or an outright acquittal. *See Grey*, 298 S.W.3d at 654 (Cochran, J., concurring). That is his call to make. But the outcome of that gamble does not give rise to a meritorious appellate complaint that appellant lacked notice of the lesser included offense.

We overrule appellant's third issue.

19

## Conclusion

Having overruled all of appellant's issues, we affirm the trial court's judgment.

/s/    Kevin Jewell
       Justice

Panel consists of Justices Busby, Brown, and Jewell.
Publish — Tex. R. App. P. 47.2(b).